**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROCKWOOD SELECT ASSET FUND
XI (6)-1, LLC, a Utah limited liability
company,

    Plaintiff - Appellant,

v.

DEVINE, MILLIMET & BRANCH,
a New Hampshire Professional
Association,

    Defendant - Appellee.

No. 13-4112

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No.: 2:13-cv-00044-TS)**

---

Joseph E. Wrona, Wrona Gordon & DuBois, P.C. (Scott A. DuBois, Wrona
Gordon & DuBois, P.C., on the briefs), Park City, Utah, for Plaintiff-Appellant.

Michael F. Skolnick, Kipp and Christian, P.C. (Andrew R. Hale, Kipp and
Christian, P.C., on the briefs), Salt Lake City, Utah, for Defendant-Appellee.

---

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

This appeal involves personal jurisdiction. A Utah company, Rockwood Select Asset Fund XI (6)-1, LLC, was asked to loan money. In considering the request, Rockwood required the borrower to obtain an opinion letter from its New Hampshire law firm, Devine, Millimet & Branch. Devine provided the letter, which was picked up by someone (Todd Enright) and forwarded to Rockwood's owner in Utah. But Rockwood subsequently concluded that the opinion letter contained falsehoods and sued Devine in Utah federal court. The district court dismissed the suit based on lack of personal jurisdiction. Rockwood appeals, and we must decide whether Devine had sufficient contacts with Utah to permit the exercise of personal jurisdiction. We conclude that Devine's contacts with Utah were insufficient under two precedential decisions: *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115 (2014), and *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996). Thus, we affirm.

Personal jurisdiction can be general or specific. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988). Rockwood relies on specific jurisdiction, which exists only when the suit relates to the defendant's contacts with the forum state. *Id.*; *see* Oral Arg. at 3:28-3:32 (Rockwood's disavowal of an argument involving general jurisdiction).

2

Because the court considered the complaint and affidavits, we engage in de novo review, assuming the truth of Rockwood's allegations that are "plausible, non-conclusory, and non-speculative." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

In engaging in this review, we determine:

- whether Utah law would allow service on Devine and, if so,

- whether service would deprive Devine of due process.

*See Wenz v. Memery Crystal*, 55 F.3d 1503, 1506-07 (10th Cir. 1995).

Utah law authorizes service to the extent permitted by the Fourteenth Amendment's Due Process Clause. *See* Utah Code Ann. § 78B-3-201(3) (2013) (stating that the Utah long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment"). The resulting question is whether service of process would have deprived Devine of due process. The answer depends on whether Devine purposefully availed itself of the privilege of conducting business in the forum state. *Dudnikov*, 514 F.3d at 1071.

For this inquiry, Rockwood bears the burden. *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (stating that the plaintiff bears the burden of establishing personal jurisdiction). To satisfy this burden, Rockwood need only make a prima facie showing that the facts alleged, if

3

true, would support personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).

Rockwood focuses on seven factual allegations in the complaint:

- Rockwood informed Devine that it was a limited liability company organized under Utah law;

- the loan documents identify Rockwood as a Utah company and provide a Utah address for notice to Rockwood;

- Rockwood's owner, a Utah resident, told Devine he would make all of the decisions pertaining to the loan;

- Rockwood's owner was in Utah when he talked on the telephone to a Devine attorney;[1]

- Rockwood directed Devine to address the opinion letter to a Utah location;

- Devine complied by addressing the letter to Rockwood at a Utah location; and

- Rockwood relied on the opinion letter while in Utah and suffered injury there.

These allegations involve three basic connections to Utah:

- Rockwood's formation in Utah and transaction of business there;

- Devine's act of sending the opinion letter to a Utah address; and

---

[1]     In its brief, Rockwood states that the owner engaged "in several phone calls from Utah."  Pl.'s Opening Br. at 10 (Oct. 11, 2013); *see also* Oral Arg. 5:59-6:04 (Rockwood's statement that its owner had telephone "conversations" with Devine). In his affidavit, however, the owner stated only that he had spoken with the Devine attorney by telephone while in Utah.  Appellant's App., vol. II at 129.  The owner did not indicate whether he had one call or multiple calls.  *See id.*

- Devine's telephone communication with Rockwood's owner while he was in Utah.

These connections are insufficient for personal jurisdiction in Utah. Rockwood's strong connection to Utah does not suffice under *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115 (2014), and Devine's opinion letter and telephone call do not suffice under *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996).

*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state. *Walden*, 134 S. Ct. at 1122-26. *Walden* involved a Georgia police officer's seizure in Georgia of money held by individuals with strong connections to Nevada. *See id.* at 1119-20. The Georgia officer knew about these connections. *See id.* at 1124. But the Supreme Court held that this knowledge was not enough to subject the Georgia police officer to jurisdiction in Nevada. *Id.* at 1122-26. The Court reasoned that the jurisdictional analysis cannot be driven by "a plaintiff's contacts with the defendant and forum." *Id.* at 1125. Thus, the Georgia officer "did not create sufficient contacts with Nevada" simply by directing "his conduct at plaintiffs whom he knew had Nevada connections." *Id.*

Under *Walden*, Rockwood's reliance on its own Utah connections is misguided. Like the Georgia officer in *Walden*, Devine interacted with the

5

plaintiff after learning of its strong connections to the forum state. In *Walden*, this interaction was insufficient for personal jurisdiction. The same is true here.

The remaining connections are: (1) Devine's issuance of an opinion letter addressed to a Utah location, and (2) a telephone call with the Rockwood owner while he was in Utah. These contacts are insufficient under *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996). There a Colorado law firm issued an opinion letter, which eventually went to the lender in Michigan. *See Trierweiler*, 90 F.3d at 1534. In connection with the opinion letter, the Colorado law firm once spoke by telephone with the lender's attorney while he was in Michigan. *See id.* Afterward, the lender sued the Colorado law firm in Michigan, claiming negligence in preparing the opinion letter. *See id.* at 1531-32. We held that the Michigan court lacked personal jurisdiction over the law firm notwithstanding the opinion letter and telephone call. *Id.*

Rockwood tries to distinguish *Trierweiler*, focusing on Devine's decision to address its opinion letter to Rockwood at a Utah address. The *Trierweiler* opinion does not say how the opinion letter was addressed,[2] but notes an allegation by the plaintiff that the attorney writing the opinion letter understood that it would go to

---

[2]     Rockwood states that in *Trierweiler*, the Colorado law firm addressed its opinion letter to the Colorado client. Appellant's Opening Br. at 29 (Oct. 11, 2013); *see also* Appellant's Reply at 13-14 (Dec. 5, 2013) (stating that in *Trierweiler*, "the law firm did not address the letter to Michigan"). But in the *Trierweiler* opinion, the Court did not say how the letter had been addressed. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996).

someone in Michigan.[3]  *Id.*  In these circumstances, Rockwood's distinction is immaterial:  Regardless of how the opinion letter was addressed in *Trierweiler*, the plaintiff's allegation was that the letter was going to end up in Michigan (the forum state) and the Colorado law firm knew that.  As a result, *Trierweiler* applies notwithstanding the Devine firm's act of addressing the opinion letter to a place in Utah (the forum state).

Rockwood focuses on Devine's intention for its opinion letter to end up in Utah.  To Rockwood, this fact distinguishes *Trierweiler* because there the Colorado recipient forwarded the opinion letter to Michigan.  Oral Arg. at 9:24-

---

[3]    In *Trierweiler*, the plaintiff argued on appeal that the opinion letter triggered specific jurisdiction because the attorneys "knew that their opinions would be provided to, and relied upon by, [plaintiff Daniel Trierweiler] in Michigan." Appellant's Reply Br. at 10, *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996) (Nos. 94-1514, 94-1522).  For this argument, the plaintiff argued that the law firm had sent its opinion letter to one of the guarantors in Colorado, "knowing that [it] would forward [the opinion letter] to Michigan. *Id.* at 10 n.12; *see also* Appellant's App., vol. II at Ex. 50, Plaintiff's Br. in Support of Mot. to Apply Mich. Law at 6, *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996) (Nos. 94-1514, 94-1522) (the plaintiff's allegation that the law firm's opinion letter had been "sent to and received by [plaintiff Daniel] Trierweiler in Michigan").

10:48.[4]  This distinction proves illusory upon examination of why and how the *Trierweiler* and Devine opinion letters ended up in the forum states.

In both cases, the opinion letters were delivered to the lender through an intermediary:  in *Trierweiler*, the intermediary was the client, whom the plaintiff alleged was in Colorado;[5] in our case, the intermediary was Todd Enright, who picked up the opinion letter in New Hampshire.  Appellant's Reply Br. at 3.  In both cases, the intermediary lacked any decisionmaking role:  in *Trierweiler*, the decisionmaker was Mr. Trierweiler (in the forum state), who required the guarantor to "provide him" with the opinion letters;[6] in our case, the loan decision would be made by Rockwood's owner, who was also in the forum state.  In these circumstances, we cannot distinguish *Trierweiler* based on the fact that Devine addressed the opinion letter to a Utah location, while the law firm in *Trierweiler* presumably sent its opinion letter to a Colorado address.

---

[4]    The *Trierweiler* opinion never states where the opinion letter was actually sent.  But we can assume for the sake of argument that it was sent to an address in Colorado.  The defendants argued that it had been sent to an address in Colorado, not Michigan.  *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996).  Though the Court does not say whether this allegation is correct, it does refer to the Colorado guarantor's act of sending the opinion letter to Michigan through an intermediary.  *Id.*  Thus, we can assume that the *Trierweiler* opinion letter was sent to a Colorado location and later delivered to Michigan through an intermediary.

[5]    *See Trierweiler*, 90 F.3d at 1534.

[6]    *See Trierweiler*, 90 F.3d at 1530.

8

Under *Walden* and *Trierweiler*, personal jurisdiction in Utah cannot be based on Rockwood's strong connection to Utah, Devine's opinion letter addressed to a place in Utah, or the telephone call involving Rockwood's owner while he was in Utah. Thus, we affirm the dismissal based on a lack of personal jurisdiction.